```
                    IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                          )
                                )      Chapter 7
EDWARD WILLIAM EDMONDS,         )
PATRICIA ANN EDMONDS,           )      Bankruptcy No. 09-01328
                                )
     Debtors.                   )
```

**ORDER RE: MOTION SEEKING TO HAVE CREDITOR HELD IN CONTEMPT, SEEKING DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY, AND SEEKING DAMAGES FOR VIOLATIONS OF THE IOWA DEBT COLLECTIONS PRACTICES ACT**

This matter came before the undersigned on October 6, 2009, on Debtors' Motion Seeking to Have Creditor Held in Contempt, Seeking Damages for Violations of the Automatic Stay, and Seeking Damages for Violations of the Iowa Debt Collections Practices Act.  Debtors Edward and Patricia Edmonds appeared with their attorney, Paul Gandy.  Attorney Gordon Fischer appeared on behalf of Collins Community Credit Union.  After the presentation of evidence and argument, the Court took the matter under advisement.  The time for filing briefs has now passed and this matter is ready for resolution.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**STATEMENT OF THE CASE**

Debtors Edward and Patricia Edmonds ("Debtors") seek to have Creditor Collins Community Credit Union ("the Credit Union") held in contempt for violations of the automatic stay.  They argue the Credit Union improperly sent communications to Debtors regarding debts with the bank that violate the automatic stay, as well as the Iowa Debt Collections Practices Act.  The Credit Union argues that any alleged violations of the automatic stay are encompassed in the parties' Settlement Agreement.  Debtors assert that the violations are outside the scope of the Settlement Agreement. The parties have agreed to have the Court resolve whether their Settlement Agreement includes the violations of the automatic stay articulated in Debtors' Second Motion for Contempt before proceeding to a trial on the merits.

## FINDINGS OF FACT

Debtors filed their Chapter 7 petition on May 13, 2009. In their petition, Debtors list two accounts with the Credit Union, a share draft account and a primary savings account. In addition, Debtors list the Credit Union as a creditor for their auto loan as well as for an overdrawn share draft account.

On July 8, Debtors filed a Motion for Contempt against The Credit Union, alleging that the Credit Union failed to redact nonpublic information in its Proof of Claim, thus violating Bankruptcy Rule 9037 and the Iowa Debt Collections Practices Act, and invading Debtors' privacy. The parties subsequently settled this matter in a Confidential Settlement Agreement ("Settlement") dated July 30, 2009, and Debtors withdrew their Motion for Contempt. A release was embodied in the Settlement, as follows:

> 6. **Release.** The Edmonds on behalf of each of them and each of their successors and assigns, hereby absolutely, unconditionally, and completely release and discharge forever and for all purposes Collins, and its representatives, agents, officers, directors, shareholders, successors, assigns, parents, and subsidiaries from any and all known and unknown claims, actions, causes of action, demands, liabilities, and complaints of any nature whatsoever, arising from or related to the matters set forth in the Motion up to the date of this Agreement.

On August 7, 2009, Debtors filed a second Motion for Contempt against The Credit Union, alleging that it violated the automatic stay and the Iowa Debt Collection Practices Act by sending Debtors two letters seeking to collect the amount of Debtors' checking account overdraft (dated June 4, 2009, and June 16, 2009), a credit card statement (dated June 19, 2009), and a written request for payment of safe deposit box rent (dated June 30, 2009). Prior to the October 6 hearing, Debtors filed as exhibits two additional letters received from the Credit Union. The first of these letters, dated July 31, is a request for rent for Debtors' safe deposit box. The second of these letters, dated August 6, requests that Debtors return the keys to their safe deposit box as their lease had expired. Debtors assert that these mailings were actions to collect in violation of the automatic stay, and that these were prohibited debt collection practices within the meaning of the Iowa Debt Collection

Practices Act.  The Credit Union filed an Objection to Debtors' Motion for Contempt.

Subsequently, the Credit Union filed a Motion to Dismiss Debtors' Motion for Contempt.  The Credit Union's motion alleges that Debtors' second Motion for Contempt is barred by claim preclusion and that the Settlement entered into by the parties disposes of any potential causes of action the Debtors now seek to bring.

**SUMMARY OF THE ARGUMENTS**

Debtors argue that the release clause in their prior settlement with the Credit Union does not preclude their current Motion for Contempt against the Credit Union for violating the automatic stay.  Specifically, Debtors allege that the conduct forming the basis of the first Motion for Contempt was wholly separate from the conduct forming the basis of the second Motion for Contempt, and therefore the release clause in Debtors' settlement agreement with the Credit Union does not apply to the second Motion.

The basis of the first Motion for Contempt was the Credit Union's failure to redact personal information about Debtors from their Proof of Claim.  Debtors assert that the four communications from the Credit Union that constitute the basis for their second Motion for Contempt are wholly separate from its previous failure to redact personal information.  Debtors argue, therefore, that their Motion for Contempt based on the Credit Union's potential violations of the automatic stay was not foreclosed by their settlement agreement with the Credit Union because the automatic stay violations are not "arising from or related to the matters set forth in the [settled] Motion."

The Credit Union argues that its settlement with Debtors includes a global release clause that bars Debtors' current Motion for Contempt.  Specifically, the Credit Union alleges that any matter between itself and Debtors during the course of Debtors' bankruptcy "relates to" the original Motion for Contempt and Settlement Agreement.  Therefore, the Credit Union argues, any subsequent action or motion by Debtors against the Credit

3

Union is barred by the release clause of the parties' initial Settlement Agreement.

The Credit Union notes in its brief that nearly all of the mailings which constitute the basis of Debtors' current Motion for Contempt were mailed prior to the parties' executed Settlement Agreement. It argues that, because these alleged stay violations occurred prior to Debtors and the Credit Union executing the Settlement Agreement, the Settlement Agreement encompassed them. The Credit Union's brief acknowledges that it sent two communications to Debtors after the Settlement Agreement was executed. At the October 6 hearing, the Credit Union conceded that if these two post-Settlement Agreement communications are violations of the automatic stay, they would not be covered by the release clause in the Settlement Agreement.

Additionally, the Credit Union argues that Debtors' current Motion for Contempt is barred by the doctrine of claim preclusion. The Credit Union asserts that the three requisite factors for claim preclusion are satisfied in this case: (1) the parties in the first and second lawsuit are identical; (2) the claims in the second suit were fully and fairly adjudicated in the first suit; and (3) there is a final judgment on the merits in the first suit. First, as Debtors and the Credit Union were and are the only two parties to either motion, the Credit Union states that the first prong of claim preclusion is met. Second, because the alleged automatic stay violations could have been addressed during the first motion, the Credit Union argues, the second prong of claim preclusion is satisfied. Finally, the Credit Union asserts that the third prong is satisfied as the parties reached a Settlement Agreement and Debtors dismissed their first Motion for Contempt with prejudice.

## CONCLUSIONS OF LAW

In Iowa, an agreement to settle a legal dispute is a contract, and as such, all settlement agreements are governed by contract law. McEnany v. West Delaware County Community School Dist., 844 F.Supp. 523, 534 (N.D. Iowa 1994); see also Jordan v. Brady Transfer & Storage Co., 284 N.W. 73, 82 (Iowa 1939) ("There is nothing in the nature of . . . a release of liability . . . that calls for any different construction or treatment at the

4

hands of a court, than that accorded to other contracts."). "In the absence of an express reservation of rights, [a settlement agreement] disposes of all claims between [the parties] arising out of the event to which it related." Casey v. Koos, 323 N.W.2d 193, 198 (Iowa 1982). Agreements to settle and dispose of potential claims and potential future damages, known or unknown, are valid so long as the parties intend to dispose of these claims when they form the agreement. Stetzel v. Dickenson, 174 N.W.2d 438, 440 (Iowa 1970).

In interpreting a settlement agreement, the court "judge[s] the intent of the parties by what they did or said, rather than by some secret, undisclosed intention they may have had in mind, or which occurred to them later." Brown v. Hughes, 99 N.W.2d 305, 308 (Iowa 1960); see also Pedersen v. Bring, 117 N.W.2d 509, 511 (Iowa 1962) ("The intent of the parties must be determined from what they did; and if the instrument is clearly one thing or the other, a covenant not to sue, or a full release of [a party], there is no room for construction."). In interpreting written contracts, courts hold to the principle that the intent of the parties controls, and unless there is ambiguity in the contract, the parties' intent is determined by the words of the contract itself. Thornton v. Hubill, Inc., 571 N.W.2d 30, 33 (Iowa App. 1997) (citing Iowa R.App. P. 14(f)(14)). An ambiguity arises when "a genuine uncertainty exists as to which of two reasonable constructions is proper." Berryhill v. Hatt, 428 N.W.2d 647, 654 (Iowa 1988). Ambiguities do not arise from parties' mere disagreement over the meaning of a word or phrase. Thornton, 571 N.W.2d at 33. If a settlement agreement is not ambiguous, the court will enforce it as written. Id.

If a court attempts to ascertain the meaning of a contract and finds an ambiguity, it may consider extrinsic evidence to assist in determining the intent of the parties. Hartig Drug Co. v. Hartig, 602 N.W.2d 794, 797 (Iowa 1999). Courts will consider extrinsic evidence when the contract terms themselves are ambiguous and require interpretation. See Echols v. State, 440 N.W.2d 402, 405 (Iowa App. 1989) (holding that extrinsic evidence is admissible in order to determine what parties mean by the words "to pay moving expenses" in their employment agreement). However, when the contract terms are unambiguous,

5

the court may not consider extrinsic evidence. Salsbury v. Nw. Bell Tel. Co., 221 N.W.2d 609, 611 (Iowa 1974).

Claim preclusion operates to bar "the relitigation of issues which were actually litigated or which *could* have been litigated in the first [matter]." Lovell v. Mixon, 719 F.2d 1373, 1376 (8th Cir. 1983) (emphasis in original). Claim preclusion requires that "the party against whom the earlier decision is being asserted had a 'full and fair' opportunity to litigate the issue in question." Id.; see also Ideal Mut. Ins. Co. v. Winker, 319 N.W.2d 289, 292 (Iowa 1982). Iowa courts have determined that a "full and fair" opportunity generally requires submission of the parties' issues to the court. Bascom v. Jos. Shlitz Brewing Co., 395 N.W.2d 879, 884 (Iowa 1986). In the context of indemnification, Iowa courts have held that a settlement agreement does not amount to an adjudication that will bar subsequent adjudication on the merits of a claim. See McNally & Nimergood v. Neumann-Kiewit Constr., Inc., 648 N.W.2d 564, 575 (Iowa 2002).

## ANALYSIS

The Court finds the Credit Union's argument of claim preclusion to be inapplicable. The parties' Settlement Agreement was not presented to the Court for approval and therefore does not rise to the level of a "full and fair" opportunity under Iowa law.

The Court finds that the release clause included in the Settlement Agreement between Debtors and the Credit Union is global in scope and forecloses Debtors' Motion for Contempt with respect to all of the Credit Union's actions occurring on or before July 30, the date the parties entered into the Settlement Agreement. At the time the parties executed their Settlement Agreement, four of the automatic stay violations alleged by Debtors had occurred. Thus, these four alleged violations were "known . . . claims . . . related to the matters set forth in the Motion" and are foreclosed by the Settlement Agreement.

Debtors' Motion for Contempt with respect to the two letters sent by the Credit Union after July 30, however, survives the Settlement Agreement. These letters were not sent until after

6

the parties had executed the Settlement Agreement.  Therefore, they are not the basis of a "claim . . . related to the matters set forth in the [original] Motion <u>up to the date of this Agreement</u> [July 30]."  Debtors could not waive a claim or right with a settlement agreement that was executed before the claim or right arose.

    **WHEREFORE**, the release agreement included in the parties' Settlement Agreement is global in scope and encompasses all claims arising on or before July 30, the date the parties executed the agreement.

    **FURTHER,** Debtors' Motion for Contempt, with respect to the four mailings received on or before July 30, is DENIED.

    **FURTHER,** Debtors may pursue their Motion for Contempt with respect to the two mailings received after July 30 at their discretion.

    Dated and Entered: November 10, 2009

                                          _____

                                          Paul J. Kilburg
                                          Bankruptcy Judge